■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. REGINALD BATTEN, Also Known as DAVID WHITE, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered December 10, 1970, convicting him of murder in the first degree (felony murder) under three separate counts, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. On the night of March 27, 1965, three butchers were shot to death at their establishment. Their bodies were found at approximately 1:00 A.M. on March 28. After an intensive investigation the police were led to Kazle Anthony, who had worked at the butcher shop for the victims. During police interrogation Kazle eventually broke down and confessed to the murder of the three butchers. In his confession, however, he implicated defendant, Reginald Batten, in the planning and commission of the murder. Both Batten and Anthony were indicted, tried and convicted of murder in the first degree under the felony murder theory. Batten had been indicted for acting in concert and aiding and abetting Kazle Anthony in the fatal shooting of the three butchers. Batten's conviction, however, was reversed on eventual appeal to the Court of Appeals, in reliance upon *Bruton* v. *United States* (391 U. S. 123); (*People* v. *Anthony*, 24 N Y 2d 696). On the retrial (which we are now reviewing), the prosecution, in the main, relied on certain exculpatory statements made to the police which were brought out on the People's case. In such statements, defendant indicated that he refused to participate with Kazle Anthony and Wilbert Anthony (Kazle's brother, who was not charged) in the planned robbery and murder of all persons present at the butcher shop at such time. He admitted, however, that at around 1:00 A.M.,

about four hours after he had refused to participate in the robbery, Kazle Anthony came to him at his cab stand and gave him a suitcase full of money to hold. Defendant admitted to the police that he had "figured" the money was stolen from the butcher shop they had planned to rob. The stolen money was eventually recovered by the police when defendant told the police exactly where it could be found. The only other testimony implicating defendant was the testimony of Kazle Anthony's wife, a relative of Batten's, who testified that she received a call from her husband around 6 or 7 o'clock on the evening of the murder and was told to give Batten his (Kazle's) gun when Batten called for it. About an hour later Batten came and she gave him a gun and holster. A toy gun and holster were found in Batten's possession when he was picked up, but Mrs. Anthony testified that a toy gun in evidence was not the gun she gave Batten that Saturday evening. The prosecution relied on the inference which a jury may draw from the recent unexplained, or falsely explained, possession of the fruits of a crime as justifying the inference that Batten had committed the robbery during which the three butchers were killed (see *People* v. *Galbo,* 218 N. Y. 283). The trial court charged that the jury was not required to draw a guilty inference from the recent, falsely explained, possession of the stolen money. The court charged: "The question is for you to determine. Do the acts of possession and concealment of the money stamp the defendant as the culprit or does the explanation that he offered satisfy you that the indicated possession of the money was an innocent one? If you have a reasonable doubt concerning that, you should resolve that doubt in the defendant's favor. *On the other hand, if* you are convinced from all the facts and the circumstances that the recent and exclusive *possession of the money and the subsequent hiding* and concealment of it *was a guilty one* and if you are satisfied beyond a reasonable doubt of that fact, you would be *justified in inferring that he is guilty*" (italics supplied). From all that preceded it, the court clearly meant that the jury, if it found defendant's possession and hiding of stolen money justified a guilty inference, would at that point be justified in returning a verdict of guilty of murder in the first degree or one of its lesser included offenses. This was grave error. The trial court should have instructed the jury that, if they concluded that a guilty inference was warranted, then they must determine whether the facts point to Batten as a knowing receiver and possessor of stolen goods or as a participant involved in the robbery itself. As Judge Cardozo so aptly phrased it in *People* v. *Galbo* (*supra,* p. 290): "Only half the problem, however, has been solved when guilty possession fixes the identity of the offender. *There remains the question of the nature of his offense.* Here again the facts must shape the inference. Is the guilty possessor the thief, or is he a receiver of stolen goods?" (italics supplied). The trial court in this case completely overlooked in its charge that Batten could have been guilty of a knowing receipt, possession and concealment of the stolen money, without having participated in the robbery resulting in the murders. In short, there were two guilty inferences which the jury could have drawn under the circumstances. Defendant could have been involved in the robbery which resulted in the death of three men, or he could have merely been a knowing possessor and receiver of stolen money. Of course, since the inference of guilt from such possession is one of fact and not of law, it need not be drawn at all by the jury. The facts in this case, if defendant's statements to the police were to be believed, point to guilt of possession of stolen money as a receiver. The trial court, however, in effect charged that there was only one guilty inference which could be drawn from the facts and, if the jury concluded defendant's possession was essentially illegal, they could find defendant guilty

of murder in the first degree. This erroneous charge alone requires reversal. On retrial, the trial court should allow, under the *res gestae* rule, the introduction of statements made by defendant to the District Attorney shortly after defendant's statements to the police which were introduced into evidence. In addition, this court is of the opinion that it was improper for the prosecution in its opening to indirectly convey to the jury that Kazle Anthony had implicated Batten in the former's confessions. Hopkins, Acting P. J., Martuscello, Gulotta and Brennan, JJ., concur; Benjamin, J., dissents and votes to affirm, with the following memorandum: I see no reversible error in this record. The charge on recent possession of the fruits of the crime was substantially correct, since, if the jury disbelieved defendant's story as to how he had obtained the money, the only possible inference was that he had obtained it during the commission of the robbery and murder (see *People* v. *Everett*, 10 N Y 2d 500, 508–510). Moreover, the charge on that point clearly was not harmful to defendant, as it instructed the jury to find *innocent* possession of the stolen money, if it believed defendant's story, even though his testimony showed at best a guilty possession of stolen goods. Additionally, a charge that the jury could find defendant guilty of criminal possession of stolen goods would have been erroneous in this case, as that offense was not charged in the indictment and it is not a lesser included offense of the charge of murder in the first degree. In short, then, there was no reversible error in the charge. I see no prejudice to defendant from the exclusion of written statements made by him to the District Attorney, as those statements were substantially the same as the oral statements made to police officers and testified to by them at the trial. Nor do I view the prosecutor's comments in his opening statement, read in context, as implying to the jury that Anthony's confession had implicated defendant in the murder. At most they implied that Anthony had indicated that defendant had the stolen money — a fact which defendant had not previously mentioned, but thereafter admitted with an exculpatory explanation. And if I were to assume, *arguendo*, that these comments did constitute a back-handed *Bruton* error, I would overlook it as immaterial, since these comments were made only in the opening statement and were not thereafter repeated in the testimony, colloquy, summations or charge.