■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT ROBINS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Lonschein, J.), rendered July 23, 1981, convicting him of robbery in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and a new trial is ordered.

At approximately 8:15 A.M. in the morning of July 5, 1979, James Ray was working in his auto repair shop when he was approached by two men who asked for a boost from a battery. Mr. Ray answered that he could not help them, but the men continued to approach. When they came nearer to Ray, one of the men drew a gun and directed Ray into the repair shop office. It was dark inside the office; light entered it only when a third person, another robber, would occasionally open the office door. Inside the office the two robbers stood behind Ray where he could not see them, and forced him to keep his head down. Eventually, the robbers pushed Ray into a dark bathroom and fled, taking his briefcase and a quantity of cash. Ray left the bathroom almost immediately, however, and saw the three outside the garage, just before they scattered in different directions. Ray then called the police.

Ray described the robbers as black male youths, between the ages of 20 and 23, 140 to 150 pounds, and five feet five inches, five feet six inches and five feet eight inches tall, respectively. Although at trial he testified that nearly $5,000 had been taken, he initially told police that the thieves had taken only the $370 in cash which was in his briefcase. Additionally, the briefcase contained, *inter alia,* a number of vehicle registrations as well as a credit card and a bank card. Approximately two weeks after the robbery, on July 19, 1979, the defendant Robert Robins was found in possession of several of these items.

At the trial, the complainant Ray identified the defendant as the man who had the gun and whom he later saw carrying his briefcase out of the garage. He no longer had any independent recollection of the descriptions he had given the police.

Ray testified further that in February of 1980, seven months after the robbery, he was called to the police station where two lineups were conducted. Ray stated that in each lineup, he selected the same man, the defendant, as the robber with the gun. However, according to the officer who arranged the two viewings, the defendant Robbins was not a participant in the first lineup, and at that time Ray identified another person, not a suspect, as one of the robbers. Ray did select the defendant in the second lineup.

The defendant testified on his own behalf that he was 5 feet 11 inches tall, and had been employed, at the time of the crime, as a driver for the W. D. Cab Service. He stated that

on July 19, 1979, he found a credit card, automobile registration and other papers in his cab while he was cleaning it out, and put them in his pocket to turn over to the company office. Later that evening, these articles were taken from him by a police officer. The defendant denied any involvement in the robbery. On cross-examination, however, he admitted that among the papers removed from him were certain credit cards belonging to persons other than the complainant.

Prior to the delivery of its charge, the trial court suggested to counsel that they examine the presumptions discussed in the case of *People v Galbo* (218 NY 283). That case concerns, *inter alia,* the inferences that may be drawn by a jury from the recent and exclusive possession of the fruits of a crime *(People v Galbo, supra,* pp 290-291). The trial court indicated its intent to give such a charge. The defense counsel objected, on the ground that the defendant's possession of the credit cards and of the automobile registrations of the complainant some two weeks after the crime could not be said to be recent. The trial court overruled the objection, stating that the issue of recent possession was one for the jury. The court then instructed the jury as follows:

"Now, in this case the People claim that on July 19, 1979 the defendant was in possession of certain of the fruits of the crime. If you recall, Mr. Earl *[sic]* testified that not only was money taken as charged in the indictment, but in addition a briefcase was taken concerning—containing a number of auto registrations, a Dime Savings Bank credit card. According to the testimony, if you believe it beyond a reasonable doubt, one of those auto registrations and credit card were in the defendant's possession on July 19, 1979 approximately fourteen days after the alleged commission of the crime.

"*I charge you that the law that applies and the law of the State is that recent and exclusive possession of the fruits of a crime if unexplained or if falsely explained, will justify the inference by a jury that the defendant was guilty of the robbery* that took place on July 5, 1979. You are not bound however to draw such an inference and you may reject it as you see fit.

"The defendant in explaining his possession of the credit card and the automobile registration testified that he found it with a number of other items in his taxicab. If you find his testimony to be truthful then he has explained his possession. On the other hand, *if you find that he did not explain his possession of the items which were received in evidence or that in explaining that he gave what was a false explanation, then*

*you may draw an inference from the defendant that he committed the robbery"* (emphasis supplied).

The defendant objected to the charge arguing that no inference could be drawn because his possession was not recent, and also because an inference tended to shift the burden of proof with respect to the crime of robbery. The court gave the following additional charge: "THE COURT: All right, your verdict in this case will be guilty or not guilty. I might tell you in connection with the definitions I gave you about recent and exclusive possession of the credit card and the driver's license, I'm not going to go into the details of that, I'm going to ask you to consider exactly what I've told you. However, the People still have the burden of proof. They still have to overcome the presumption of innocence. *But you may consider it in possession of a credit card as an inference that the defendant did commit the robbery* if the People proved to your satisfaction beyond a reasonable doubt all of the other elements of the crime as I've stated them to you on those five elements that I spoke to you about in my charge" (emphasis supplied). No objection was taken to the additional charge, but the defendant requested that the court define recent and exclusive possession. The trial court then instructed the jury that they were to determine whether or not possession 14 days after the robbery was "recent". The defendant was convicted of robbery in the second degree.

We find that the trial court erred in its charge to the jury on the "recent and exclusive possession" of the fruits of the crime. Under the facts of the case, and given the weakness of the identification testimony, the jury could have found that defendant was merely the possessor of the stolen property. Moreover, contrary to the contentions of our dissenting colleague, there is evidence in the record from which the jury could have found that the defendant acquired possession after the theft. The defendant's possession of the credit cards identified at trial as belonging to persons other than the complainant tends to enhance the likelihood of, and thus gives rise to an inference that, the defendant may have been merely the possessor of the complainant's stolen card and other property rather than the perpetrator of the robbery charged. Therefore, the court was required to instruct the jury that there were *two* inferences which could have been drawn from the evidence: (1) that the defendant was involved in the robbery, or (2) that the defendant was merely the knowing possessor of the stolen property *(see, People v Galbo,* 218 NY 283, 290, *supra; People v Baskerville,* 60 NY2d 374, 382; *People v Thorn-*

*ton,* 104 AD2d 426, 427; *People v Shurn,* 69 AD2d 64). The trial court charged only the former.

It is true that the defendant did not object to the charge as given on this specific ground. However, the defendant did object, and strenuously, to instructing the jury that *any* inference whatsoever might be drawn from his possession of the stolen items, as his possession was not sufficiently recent to give rise to an inference of criminality *(see, e.g., People v Baskerville,* 60 NY2d 374, 383, *supra).* Under the facts of this case the one-prong instruction citing only the crime of robbery was "erroneous and highly prejudicial", warranting reversal even in the absence of a specific objection *(see, People v Bannerman,* 104 AD2d 419; *People v Seaman,* 96 AD2d 603, 604). Lawrence, J. P., Kooper, and Spatt, JJ., concur.

Eiber, J., dissents and votes to affirm the judgment appealed from, with the following memorandum: We are asked on this appeal to decide whether the trial court improperly instructed the jury with respect to the presumption arising from the recent and exclusive possession of stolen property. The thrust of the defendant's argument is that the trial court committed reversible error in instructing the jury that the defendant's recent and exclusive possession of the fruits of the crime, if unexplained or falsely explained, would only justify the inference that the defendant was guilty of robbery. The defendant suggests that the trial court should have advised the jury that there were two permissible inferences which could reasonably have been drawn from the evidence, to wit, that the defendant was either guilty of committing the robbery or, that he was guilty only of criminal possession of stolen property. "The rule that an inference of guilt may be drawn from recent and exclusive possession of the fruits of a crime is an ancient one (see *Barnes v United States,* 412 US 837, 843-844), long recognized in this State *(Knickerbocker v People,* 43 NY 177). Under it evidence of unexplained or falsely explained possession of recently stolen property is sufficient to establish a prima facie case and to enable a jury to find guilt beyond a reasonable doubt" *(see, People v Baskerville,* 60 NY2d 374, 382).

There remains, however, the question of the nature of his offense *(see, People v Galbo,* 218 NY 283, 290). Whether or not a trial court is required to instruct the jury regarding the possibility that the defendant was merely the possessor of stolen property rather than the actual thief, depends upon whether there is a reasonable view of the evidence under which the jury could find that the defendant acquired possession of the property subsequent to the commission of the theft

*(see, People v Howard,* 60 NY2d 999; *People v Everett,* 10 NY2d 500; *People v Porter,* 110 AD2d 662). The charge must be shaped by the facts of the particular case and the submission to the jury of the alternative inference is warranted only where "evidence is offered that the theft was committed by someone else" *(see, People v Galbo, supra,* p 291) and that the defendant came into possession of the property with knowledge of the illegality of its acquisition.

Upon careful examination of the facts disclosed by the present record, it is my belief that the trial court did not err in charging the jury that the defendant's recent and exclusive possession could justify the inference that the defendant committed the robbery, without further advising the jury that the evidence could also support the alternative inference that the defendant was merely a recipient of the stolen property.

The complainant in the instant case unequivocally testified that the defendant was the individual who had displayed a gun during the course of the robbery and he further indicated that the defendant had been standing in close proximity to the briefcase which contained the property alleged to have been stolen. The complainant watched as the defendant and his cohorts fled the scene and he additionally testified that the defendant had been carrying the briefcase as he fled. I find this evidence of identification to be neither insufficient nor "weak", as the majority suggests, and there is simply no basis in the present record, nor has any cogent reason been provided, to justify the rejection of the jury's well-founded decision to credit this witness's testimony. Ray was able to provide the police with a fairly detailed description of each of the perpetrators and, despite the lapse of a period of approximately seven months, was able to select the defendant in the only lineup in which he appeared. Based on the complainant's testimony, which implicated the defendant as the actual thief, it was unnecessary for the court to have charged the jury that they might find the defendant to be merely a knowing receiver of stolen property.

The propriety of the trial court's decision not to advise the jury of the alternative inferences is further supported by the defendant's own testimony. He claimed, at trial, that an unidentified individual had left the property in his taxicab and that he had discovered this property while he was in the process of cleaning the interior of the vehicle. Hence, even if the jury were to have credited the defendant's explanation, he could not have been found guilty of knowing possession of stolen property, since he alleged that he came into possession

of said property by innocent means. Simply stated, the circumstances of the case were such that the defendant was "either guilty of stealing * * * or guilty of nothing" *(see, People v Howard, supra,* p 1001). The record before us is utterly bereft of any proof to support the conclusion that someone else may have committed the robbery and that the defendant acquired the property subsequent to the theft, with the knowledge that it had been stolen. I simply do not find persuasive the majority's assertion that it can fairly be inferred, from the defendant's possession of credit cards belonging to persons other than the complainant, that he was merely a recipient of stolen property, rather than the actual thief, in this case. The manner in which the defendant may have acquired the property of persons other than the complainant does not, in my view, provide a sufficient foundation for the conclusion that the submission of alternative inferences was warranted at bar. In this regard, it is worthy of note that the defendant never registered any objection at trial regarding the court's decision not to submit the alternative inferences to the jury.

In conclusion, the offense of criminal possession of stolen property was simply not an issue in this case and the defendant should, in my view, be precluded from challenging the propriety of the court's charge regarding recent and exclusive possession of the fruits of the crime, since he failed to properly preserve this issue for appellate review and since there was no reasonable view of the evidence under which the jury could conclude that the defendant possessed the items taken from the complainant without also concluding that he must have committed the robbery in order to obtain possession of these items.

In accordance with the foregoing analysis, I cast my vote to affirm the judgment appealed from.